**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | |
| v. § | **CRIMINAL NO. 4:22-CR-00372** |
| § | |
| **CALEB JORDAN MCCRELESS,** § | |
| **Defendant.** § | |

## PLEA AGREEMENT

The United States of America, by and through ALAMDAR S. HAMDANI, United States Attorney for the Southern District of Texas, and Thomas H. Carter, Assistant United States Attorney, and the defendant, CALEB JORDAN MCCRELESS ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Counts 1 and 6 of the Indictment. Count 1 charges Defendant with Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Section 1349. Count 6 charges the Defendant with Wire Fraud, in violation of Title 18 United States Code, Section 1343. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 1349, Conspiracy to Commit Wire Fraud, is imprisonment of not more than 20 years and

a fine of not more than $250,000.00. Additionally, Defendant may receive a term of supervised release after imprisonment of up to 3 years. *See* Title 18, United States Code, sections 3559(a)(3) and 3583(b)(2). The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 1343, Wire Fraud, is imprisonment of not more than 20 years and a fine of not more than $250,000.00. Additionally, Defendant may receive a term of supervised release after imprisonment of up to 3 years. *See* Title 18, United States Code, sections 3559(a)(3) and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for up to 2 years, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a)(3) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied

admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

**Cooperation**

5. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, not oppose the forfeiture of assets contemplated in paragraph 19 of this agreement.

6. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to all known fraudulent activities. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

> (a) Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

3

(b) Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d) Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e) Defendant agrees to provide to the United States all documents in his/her possession or under his/her control relating to all areas of inquiry and investigation; and

(f) Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his plea.

### The United States' Agreements

7. The United States agrees to each of the following:

(a) If Defendant pleads guilty to Counts 1 and 6 of the indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the indictment at the time of sentencing, namely Counts 2, 3, 4, and 5;

(b) If Defendant pleads guilty to Counts 1 and 6 of the indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will not present for indictment any potential remaining counts arising from this factual basis;

(c) If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the

4

United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently;

(d) The government and defendant agree that the readily ascertainable loss, as contemplated by the United States Sentencing Guidelines, to the named victims at the time of this plea does not exceed $9,499,000.00;

(e) The United States will agree not to seek an upward departure or variance,

(f) The United States will agree not to seek any type of enhancement for obstruction of justice as provided for under Guidelines §3C1.1, and;

(g) The United States will not oppose any motion from the defendant to serve concurrently any sentence on multiple convictions from this course of conduct as described in the indictment.

### Agreement Binding - Southern District of Texas Only

8. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

9. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c)  to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)  to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e)  to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

10. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

11. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his/her own behalf.

**Factual Basis for Guilty Plea**

12. Defendant is pleading guilty because he is in fact guilty of the charges contained in Counts 1 and 6 of the indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

Beginning in roughly March 2020, Defendant McCreless formed McCreless Enterprises, a business based in Porter and Stafford, Texas within the Southern District of Texas, designed to market and sell medical supplies to retail brokers for use in various medical systems in the United States and Canada. Despite having no experience in the medical supplies field, Defendant McCreless claimed that McCreless Enterprises had access to high-end nitrile gloves well-known within the medical supply industry for being top of the line in terms of quality and reputation and exceedingly difficult to obtain during the COVID-19 pandemic. Defendant McCreless marketed his company through various means, including independent brokers and on-line advertisements.

7

Initially, Defendant McCreless represented that he had access to a line of high-end nitrile gloves with the brand name "Uniglove" which were produced in the United Kingdom and Malaysia. Based on these representations, Defendant McCreless signed a contract with representatives of the Crow Agency in Montana to provide gloves. After receiving payment from the Crow Agency, McCreless never delivered any gloves, because he in fact had none to deliver. This initial phase of his scheme failed when the actual manufacturer of the "Uniglove" brand learned of the deception and began informing potential clients of the scam.

In and around September 2020, Defendant McCreless modified the scheme by claiming that McCreless Enterprises had a dedicated line of "Hongray" gloves, or gloves of a similar exceptional quality. At the time, the well-known "Hongray" gloves, produced by a company of the same name in the Sichuan region of China, were coveted by the medical supply industry because of several unique qualities; they were 100% nitrile and thus non-allergenic, approved for use in the most complicated surgeries such as chemo-therapy related medical implantation, and, most importantly, pre-approved and certified for importation into the United States by the Food and Drug Administration (FDA) under Section 510K of the FDA importation regulations. As a result, McCreless was able to demand highly inflated prices for such a product during the COVID-19 pandemic. In reality, McCreless did not have access to such a line of gloves or their equivalent, despite explicitly using these claims in marketing materials.

By October 2020, Defendant McCreless had found multiple buyers of these "Hongray" or "Hongray" equivalent gloves. In negotiation and contract, McCreless expressly represented that the gloves he had for sale were either "Hongray" or "Hongray" equivalent gloves. Although the terms of the resulting contracts with named victims varied slightly, Defendant

McCreless required an initial deposit before he would ship the alleged gloves from China. Most, if not all, of the remaining payment would be due upon shipping. Between October 2020 and March 2021, Defendant McCreless collected payments from multiple victims, and failed to deliver any contracted gloves to victims A.A., S.E., and S.H. Victim E.G. took possession of a small portion of the amount of gloves he had ordered and subsequently found that those gloves were of a vastly inferior variety.

Additionally, around this time, Defendant McCreless was able to procure some number of gloves of a much lower quality from a supplier in China. Defendant McCreless shipped these inferior gloves to a warehouse in Compton, California and offered this store of gloves as satisfaction of the deal. These gloves, in addition to being inferior and not what was contracted for, were insufficient to cover the initial orders and were often promised to multiple victims without the victims knowing they were promised to others. Integral to this portion of the scheme was Luke McGinnis, a freight forwarder paid by Defendant McCreless to delay and confuse customers seeking their goods. Defendant McCreless paid McGinnis over $70,000.00 to attempt pass off the inferior gloves to the few victims persistent enough to attempt to take delivery after multiple delays and excuses for non-delivery.

For example, on January 28, 2021, victim S.H., representing New York, NY based retailer CL, Inc., initiated a series of wire transfers for a total of $1,220,000.00 from his bank in Amityville, NY to the Defendant's bank, located in Texas, based on a contract in which Defendant McCreless stated that the gloves he was selling were "Nitrile Powder Free Gloves" and "FDA 510 K Pre-market certified for Chemo use." This contract was preceded by marketing materials that explicitly stated that the gloves were "HONGRAY- NITRILE EXAM GLOVES - Powder Free –

FDA 510K" before giving various specifics as to product details.   By the end of March 2021, after weeks of delays, victim S.H., at the instruction of McCreless, contacted McGinnis as to where his gloves were.   After several more weeks of confusion and delay, McGinnis directed S.H. to a warehouse in Compton, California, where, after 4 additional days of waiting, S.H. discovered that none of the contracted gloves were available.

### Breach of Plea Agreement

13. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand.  If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution.  Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

### Restitution, Forfeiture, and Fines – Generally

14. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of

property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

15. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

16. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his/her assets to deliver all funds and records of such assets to the United States.

17. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

### Restitution

18. Defendant agrees to pay full restitution to the victims regardless of the counts of conviction. Defendant stipulates and agrees that as a result of his criminal conduct, the victims incurred a monetary loss of at least $16,729,500.00 to the following individual victims as named

11

in the indictment: Victim A.A.- $400,000.00, Victim S.E.-$1,350,000.00, Victim E.G.-$13,757,500.00 and Victim S.H.- $1,222,000.00. Defendant agrees to full restitution as to the named victims in the above amounts. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victims. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

**Forfeiture**

19. Defendant stipulates and agrees that the property listed in the Indictment's Notice of Forfeiture (and in any supplemental Notices) is subject to forfeiture, and Defendant agrees to the forfeiture of that property. In particular, but without limitation, Defendant stipulates that the following specific property is subject to forfeiture:

- The residence and real property located at 2039 Winner's Circle, Richmond, Texas, 77406, together with all improvements, buildings, structures, and appurtenances, and legally described as: Lot Twenty-Four (24), in Block Five (5), of Grand River, a subdivision in Fort Bend County, Texas, according to the map o plat thereof, recorded under Slide No(s). 1650/A through and including 1654/A of the Plat Records of Fort Bend County, Texas.

- 2021 Ford F-250 4WD Crew Cab Super Duty Truck Vehicle, TX Plate: PJC6288 VIN:1FT7W2BT6MEC26259

- 2020 Land Rover Range Rover LL (Sport) Vehicle, TX Plate: NZH6932

VIN: SALWZ2RE8LA744530

20. Defendant stipulates and agrees that Defendant obtained at least $16,729,500.00 from the criminal offenses and that the factual basis for her guilty plea supports the forfeiture of $16,729,500.00. Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, section 853(p), exists. Defendant agrees to forfeit any of Defendant's property in substitution, up to a total forfeiture of $ 16,729,500.00. Defendant agrees to the imposition of a personal money judgment in that amount.

21. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

22. Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

23. Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

### Fines

24. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Complete Agreement

25. This written plea agreement, consisting of 15 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

29. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at ___Houston___, Texas, on ___May 2___, 2023

_____
Defendant

Subscribed and sworn to before me on ___May 2___, 2023,

NATHAN OCHSNER, Clerk
UNITED STATES DISTRICT CLERK

By: ___Anderson___
Deputy United States District Clerk

APPROVED:

ALAMDAR S. HAMDANI
United States Attorney

By: _____
Thomas H. Carter
Assistant United States Attorney
Southern District of Texas
Telephone: 713-567-9470

_____
M. Gordon Dees,
Attorney for Defendant

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. 4:22-CR-00372 |
| CALEB JORDAN MCCRELESS, Defendant. | § § § | |

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his/her rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____
Attorney for Defendant

5/2/2023
Date

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____
Defendant

5/2/2023
Date

15